1   Bridget B. Hirsch, State Bar No. 257015
2   bhirsch@andersonkill.com
    ANDERSON KILL CALIFORNIA L.L.P.
3   Wells Fargo Plaza
4   355 South Grand Avenue, Suite 2450
    Los Angeles, CA  90071
5   Tel:   (213) 943-1444
    Fax:   (212) 278-1733
6
7   Allen R. Wolff (Pro Hac Vice pending)
8   awolff@andersonkill.com
    Ethan W. Middlebrooks (Pro Hac Vice pending)
9   emiddlebrooks@andersonkill.com
10  ANDERSON KILL P.C.
    1251 Avenue of the Americas
11  New York, NY 10020
12  Tel.:  (212) 278-1000
    Fax:   (212) 278-1733
13
14  Attorneys for Plaintiff
    BMC Stock Holdings, Inc.
15
                UNITED STATES DISTRICT COURT
16              CENTRAL DISTRICT OF CALIFORNIA

17  BMC STOCK HOLDINGS, INC., a      )   **Civil Action No.**
18  Delaware Corporation,            )
                                     )   **COMPLAINT FOR:**
19                   Plaintiff,      )
                                     )   **(1) DECLARATORY JUDGMENT;**
20  vs.                              )   **(2) BREACH OF CONTRACT;**
                                     )   **(3) BREACH OF DUTY OF GOOD**
21  NATIONAL UNION FIRE              )   **FAITH AND FAIR DEALING; and**
22  INSURANCE COMPANY OF             )   **(4) ACCOUNTING**
    PITTSBURGH, PA, a Pennsylvania   )
23  Corporation; AMERICAN HOME       )
24  ASSURANCE COMPANY, a New         )   **DEMAND FOR JURY TRIAL**
    York Corporation; THE INSURANCE  )
25  COMPANY OF THE STATE OF          )
    PENNSYLVANIA, an Illinois        )
26  Corporation,                     )
                                     )
27                                   )
28                   Defendants.     )

_(left margin vertical text)_ Anderson Kill California L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA  90071

1    Plaintiff BMC STOCK HOLDINGS, INC. complains against each
2    Defendant and alleges as follows:
3    **PRELIMINARY STATEMENT**
4    1.    Plaintiff BMC STOCK HOLDINGS, INC. ("Plaintiff" or "BMHC")
5    brings this action against Defendants NATIONAL UNION FIRE INSURANCE
6    COMPANY OF PITTSBURGH, PA ("National Union"), AMERICAN HOME
7    ASSURANCE COMPANY ("AHAC") and THE INSURANCE COMPANY OF
8    THE STATE OF PENNSYLVANIA ("ICSP") (National Union, AHAC and ICSP,
9    collectively, "AIG" or "Defendants") because of AIG's breach of four general
10   liability fronting insurance policies issued by AIG to BMHC (the "Policies"), and
11   AIG's bad faith investigation and adjustment of claims by purported additional
12   insureds to those Policies' Completed Operations additional insured endorsements.
13   2.    Purported additional insureds have sought coverage from AIG for
14   defense costs in underlying lawsuits, which AIG paid.  AIG has subsequently
15   sought reimbursement from BMHC for these paid costs.  Where BMHC was able
16   to confirm that the claimant was an additional insured on one or more of the
17   Policies, that BMHC worked on at least one of the homes in the underlying
18   lawsuit, that the plaintiff in an underlying lawsuit alleged BMHC's work was
19   defective, and that no policy exclusion applies – that is, where additional insured
20   coverage was properly extended – BMHC has reimbursed AIG.  In almost every
21   instance, BMHC expressed concerns to AIG that the amounts paid by AIG to the
22   claimants were excessive.
23   3.    AIG, however, repeatedly failed to conduct a good faith investigation
24   and improperly adjusted at least eleven claims of purported additional insureds.
25   Despite repeated requests by BMHC, AIG has not been able to provide BMHC
26   with any evidentiary basis for AIG's payments under the Policies to those
27   additional insured claimants.
28   4.    AIG has nonetheless continued to demand reimbursement from

Anderson Kill California L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA  90071

Anderson Kill California L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

1  BMHC where no additional insured coverage exists, despite AIG's failing to
2  investigate the basis for the purported coverage. AIG has failed to honor its duties
3  to its policyholder BMHC, instead placing the interests of itself and purported
4  additional insureds before its policyholder BMHC.

5  5.  Due to AIG's wrongful and bad faith acts, BMHC has been harmed
6  and has been forced by AIG's actions to seek relief from this Court.

7  **JURISDICTION AND VENUE**

8  6.  This Court has jurisdiction under section 1332(a) of title 28 of the
9  United States Code because there is complete diversity among the parties and the
10  amount in controversy exceeds $75,000.00 exclusive of costs and interest.

11  7.  An actual controversy exists between Plaintiff BMC STOCK
12  HOLDINGS, INC. and Defendants NATIONAL UNION FIRE INSURANCE
13  COMPANY OF PITTSBURGH, PA, AMERICAN HOME ASSURANCE
14  COMPANY and THE INSURANCE COMPANY OF THE STATE OF
15  PENNSYLVANIA as to whether, under certain fronting insurance policies issued
16  to BMHC, AIG owes or ever owed certain purported additional insureds coverage
17  for the costs of defending various actions brought against those purported
18  additional insureds by third parties, for which AIG has demanded payment from
19  BMHC.

20  8.  This Court has jurisdiction over BMHC's claims for declaratory relief
21  under section 2201 of title 28 of the United States Code because an actual
22  controversy ripe for judicial determination exists between BMHC and AIG.

23  9.  Venue is proper within this judicial district under section 1391,
24  subsections (b)(1) and (b)(2) of title 28 of the United States Code because a
25  substantial part of the events or omissions giving rise to the claim occurred in this
26  judicial district, a substantial part of property that is the subject of the action is
27  situated in this judicial district, and because the defendants generally transact
28  business in this district or within the State of California.

**THE PARTIES**

10.     Plaintiff BMC STOCK HOLDINGS, INC. is a Delaware Corporation with its principal place of business in the State of Georgia.  Building Materials Holding Corporation merged into and with Stock Building Supply Holdings, Inc., several years after the corporate restructuring of Building Materials Holding Corporation in Chapter 11 bankruptcy.  The surviving entity was renamed BMC Stock Holdings, Inc.

11.     Plaintiff alleges upon information and belief that Defendant NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA is a Pennsylvania Corporation with its principal place of business in State of New York.  National Union is a subsidiary of American International Group, Inc.

12.     Plaintiff alleges upon information and belief that Defendant AMERICAN HOME ASSURANCE COMPANY is a New York Corporation with its principal place of business in the State of New York. AHAC is a subsidiary of American International Group, Inc.

13.     Plaintiff alleges upon information and belief that Defendant THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA is an Illinois Corporation with its principal place of business in State of New York.  ICSP is a subsidiary of American International Group, Inc.

**GENERAL ALLEGATIONS**

I.     THE INSURANCE POLICIES

14.     BMHC is a building materials company that provides residential building products (supply) and construction services (services) to builders and contractors throughout the United States, particularly in the American West.

15.     Pursuant to insurance requirements for a construction company, BMHC purchased insurance policies, including four fronting general liability insurance policies from the Defendants.

16.     A fronting insurance policy is, in effect, a form of self-insurance, with

**COMPLAINT**

a third party insurance company extending coverage if the grounds for coverage are established.  If the insurance company pays coverage to a policyholder or additional insured under a fronting policy, it will seek reimbursement of the covered amounts from the policyholder.

17.     AIG offers such fronting insurance policies and has acknowledged that such policies do not put AIG's own resources at risk like other liability policies.  Instead AIG only faces a credit risk as to its ability to recoup amounts paid.  AIG has described that its "role as a fronting company is to issue an insurance policy to an insured and then, transfer some or all of this risk . . . to the insured itself. This reliance on the insured to reimburse us for losses paid under the policy, creates a credit exposure for AIG." *See* AIG, "About AIG's Fronting Fees for Captive Programs", a copy of which is attached hereto as **Exhibit A**.

18.     BMHC purchased four fronting general liability insurance policies from the Defendants covering the policy periods November 11, 2003 to November 11, 2004, and November 11, 2004 to November 11, 2005.  There were two general liability insurance policies for each year under BMHC's insurance program.  For each year, one of the insurance policies covered BMHC's retail operations (supply) and the other covered BMHC's construction services operations (services).

19.     AIG addressed any credit risk it faced by requiring that BMHC post letters of credit.

20.     The two insurance policies covering BMHC's retail operations (supply) are policy numbers 480-60-23 (policy period November 11, 2003 to November 11, 2004) and 554-87-69 (policy period November 11, 2004 to November 11, 2005).  These two policies have a $2,000,000 aggregate limit and a $2,000,000 products-completed operations aggregate limit, with a per-occurrence limit of $1,000,000.

21.     The two insurance policies covering BMHC's construction services (services) are policy numbers 933-29-02 (policy period November 11, 2003 to

Anderson Kill California L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA  90071

Anderson Kill California L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA  90071

1  November 11, 2004) and 694-60-10 (policy period November 11, 2004 to

2  November 11, 2005).  These two policies have a $2,000,000 aggregate limit and a

3  $2,000,000 products-completed operations aggregate limit, with a per-occurrence

4  limit of $1,000,000.

5      22.    The two insurance policies covering BMHC's construction services

6  contain wrap exclusions.  Those wrap exclusions are not in the two policies

7  covering BMHC's supply.  This means that insurance policy numbers 933-29-02

8  and 694-60-10 do not apply to "'bodily injury' or 'property damage' arising out of

9  [BMHC's] . . . operations included in the 'products-completed operations hazard'

10  at the location described in the Schedule of this endorsement, as a consolidated

11  (wrap-up) insurance program has been provided by the prime contractor/project

12  manager or owner of the construction project in which you are involved."  Policy

13  Nos. 933-29-02 and 694-60-10 at Form No. CG 21 54 01 96.  The Schedule for the

14  wrap exclusions in both insurance policies states "All jobsites insured under wrap-

15  up programs."  Policy Nos. 933-29-02 and 694-60-10 at Form No. CG 21 54 01 96.

16      23.    All four of the insurance policies contain additional insured

17  endorsements, including applicable additional insured endorsements for

18  "Completed Operations".  Policy Nos. 480-60-23, 554-87-69 and 933-29-02 at

19  Form CG 20 37 10 01, and Policy No. 694-60-10 at Form CG 20 37 07 04.

20      24.    Although the additional insured endorsement form 20 37 10 01 in

21  Policy numbers 480-60-23 and 554-87-69 is called "Completed Operations," the

22  endorsement contains the following language:  "Any person or organization

23  contractually requiring status as an additional insured for ongoing operations you

24  perform for them."  Policy Nos. 480-60-23 and 554-87-69 at Form CG 20 37 10

25  01. These additional insured endorsements also contain a schedule box for

26  "Location And Description of Completed Operations," but that box is blank.  *See*

27  Policy Nos. 480-60-23 and 554-87-69 at Form CG 20 37 10.

28  ///

25. The Completed Operations additional insured endorsement for Policy numbers 480-60-23 and 554-87-69 (supply) is reprinted in relevant part as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - COMPLETED OPERATIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| Name of Person or Organization: |
| ANY PERSON OR ORGANIZATION CONTRACTUALLY REQUIRING STATUS AS AN ADDITIONAL INSURED FOR ONGOING OPERATIONS YOU PERFORM FOR THEM. |
| Location And Description of Completed Operations: |
| Additional Premium: |

Policy Nos. 480-60-23 and 554-87-69 at Form CG 20 37 10 01.

26. Insurance Policy numbers 933-29-02 and 694-60-10 (services) state that the name of additional insured persons or organizations is "where required by written contract." Policy Nos. 933-29-02 at Form CG 20 37 10 01 and 694-60-10 at Form CG 20 37 07 04. These additional insured endorsements also contain a schedule box for "Location And Description of Completed Operations," but that box is blank. *See id.*

///

///

///

Anderson Kill California L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

27.    The Completed Operations additional insured endorsement for Policy number 933-29-02 is reprinted in relevant part as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - COMPLETED OPERATIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name of Person or Organization: |
| --- |
| WHERE REQUIRED BY INSURED CONTRACT |
| Location And Description of Completed Operations: |
| Additional Premium: |

Policy No. 933-29-02 at Form CG 20 37 10 01.

///

///

///

///

///

///

///

///

///

Anderson Kill California L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA  90071

- 8 -

**COMPLAINT**

28.    The Completed Operations additional insured endorsement for Policy number 694-60-10 is reprinted in relevant part as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - COMPLETED OPERATIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| WHERE REQUIRED BY INSURED CONTRACT | |

Policy No. 933-29-02 at Form CG 20 37 07 04.

29.    Policy numbers 480-60-23, 554-87-69 and 933-29-02, which all contain Form CG 20 37 10 01, also state the following in their Completed Operations additional insured endorsements:

Section II – Who Is An Insured is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard."

Policy Nos. 480-60-23, 554-87-69 and 933-29-02 at Form CG 20 37 10 01.

///

Anderson Kill California L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

Anderson Kill California L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

30. Policy No. 694-60-10, which includes Form CG 20 37 07 04, contains the following provision in its Completed Operations additional insured endorsement:

> Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard."

Policy No. 694-60-10 at Form CG 20 37 07 04.

31. Each of the four insurance policies contain the same language concerning indemnification and defense against a "suit," contained on Form number CG 00 01 10 01. This language states in pertinent part as follows:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insurance Agreement

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

32. Each of the four insurance policies are governed by a Large Risk Rating Plan Endorsement ("LRPPE") (Form No. 81461), which provides for a

1  retained amount of $1,000,000 per Occurrence for products or Completed
2  Operations Liability.

3      33.    Each LRRPE provides for Allocated Loss Adjustment Expenses
4  ("ALAE").  The insurance policies define ALAE as follows:

5      "ALAE" will include all fees for service of process and court
6      costs and court expenses; pre- and post-judgment interest;
7      attorneys' fees; cost of undercover operative and detective
8      services; costs of employing experts; costs for legal transcripts;
9      copies of any public records, and costs of depositions and court-
10      reported or recorded statements; costs and expenses of
11      subrogation; and any similar, cost or expense reasonably
12      chargeable to the investigation, negotiation, settlement or
13      defense of a loss or a claim or suit against you, or to the
14      protection and perfection of your or our subrogation rights.

Policy Nos. 480-60-23, 554-87-69, 933-29-02, and 694-60-10 at Form No. 81461.

15      34.    Each of the four insurance policies is governed by ALAE Option C,
16  with an Excess % of 100%.

17      35.    ALAE Option C is defined as follows:

18      Option C: *Subject Loss* includes all or a part of *ALAE* calculated
19      according to the following formula:

20      i.    If we incur NO obligation under the policies to pay
21      damages, benefits or indemnity resulting from a claim,
22      *Subject Loss* under that claim will include all *ALAE* up to
23      the applicable *Retained Amount* and a percentage of all
24      *ALAE* in excess thereof. . . .; or

25      ii.    if we DO incur an obligation to pay damages, benefits or
26      indemnity under the policies because of a claim, *Subject*
27      *Loss* under that claim will include all *ALAE* incurred under
28      that claim, multiplied by the amount of our obligation to

1                 pay damages or benefits up to the applicable *Retained*

2                 *Amount*, divided by the total amount of our obligation to

3                 pay damages or benefits.

4 Policy Nos. 480-60-23, 554-87-69, 933-29-02, and 694-60-10 at Form No. 81461.

5 II.      THE DISPUTE

6      36.      BMHC declared bankruptcy in 2009.

7      37.      Due in part to BMHC's bankruptcy, the only new claims presented to

8 AIG under the four insurance policies are for additional insured coverage for

9 construction defect actions asserted against the purported additional insureds.

10 BMHC is not involved in those actions due to its bankruptcy.

11      38.      AIG has paid defense costs to certain purported additional insureds

12 under the Policies. AIG subsequently has sought reimbursement from BMHC for

13 those paid defense costs.

14      39.      Due to BMHC's bankruptcy, it was not involved in underlying

15 litigations and often first learned of an additional insured claim under the Policies

16 when BMHC received an invoice from AIG for reimbursement of defense costs.

17      40.      Over the course of multiple years, BMHC's corporate risk

18 management and legal department employees have complained to AIG's adjusters,

19 the adjusters' supervisors, and others at AIG that the AIG adjusters handling the

20 additional insured claims were failing to properly investigate those claims before

21 AIG accepted them, made payment under the Policies, and sought reimbursement

22 from BMHC.

23      41.      AIG failed to meaningfully respond to BMHC's concerns. BMHC

24 therefore stopped paying AIG's invoices related to those additional insured claims.

25      42.      BMHC additionally demanded that AIG provide BMHC with

26 documentation that would confirm that the payments AIG had made on the

27 additional insured claims were proper and that AIG was entitled to reimbursement

28 from BMHC. AIG has failed to provide this documentation.

Anderson Kill California L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

43. Eventually, because BMHC refused to reimburse AIG for claims that AIG would not provide documentation, AIG began to provide BMHC the additional insured claimant's contact information. AIG required that BMHC obtain approval from the additional insured claimant for AIG to send to BMHC the requested documentation.

44. After receiving documentation from AIG, where the documentation supported the additional insured claim and AIG's payment under the Policies, BMHC promptly paid the invoices.

45. However, if the documentation provided by AIG did not support the purported additional insured claim, then there was no support for AIG's payment under the Policies to that additional insured claimant. In these instances, BMHC advised AIG's adjuster (multiple times) what specific documentation was missing so that AIG could provide the needed documentation.

46. Despite failing to adequately investigate or provide BMHC with documentation that supports its payments, AIG has claimed and continues to claim that BMHC owes it $1,010,609.76 for invoices from June 2015 through September 2017. AIG also claims that additional loss reimbursement amounts have continued to accrue since September 2017.

47. By letter dated February 9, 2018, BMHC again disputed eleven claims paid by AIG as of September 30, 2017, for which AIG seeks reimbursement for defense cost payments to purported additional insureds under the Policies. The documents provided to BMHC by AIG do not provide any evidence that BMHC worked on any of the homes in the underlying lawsuits. Despite follow up by BMHC, AIG has not provided documentation supporting a right to reimbursement for these eleven claims. A copy of BMHC's February 9, 2018 letter is attached hereto as **Exhibit B**.

48. By letter dated April 26, 2018, counsel for AIG contended that because it has a broad duty to defend, AIG had to defend the purported additional

Anderson Kill California L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

1   insureds upon the submission of their claims.  AIG claimed in that letter – without

2   adequate evidentiary support – that it "has reviewed each of these eleven claims

3   and is satisfied that [AIG] has the duty to defend each of those claims and, as

4   explained above, the duty to defend is broader than the duty to indemnify."  A

5   copy of AIG's April 26, 2018 letter is attached hereto as **Exhibit C**.

6   III.   AIG HAS PAID CLAIMS AND SOUGHT REIMBURSEMENT FROM

7          BMHC WITHOUT CONFIRMING BMHC'S INVOLVEMENT WITH

8          THE HOMES IN SUIT OR CONTRARY TO POLICY PROVISIONS

9          49.   AIG has failed to demonstrate that it has performed an adequate

10  investigation into the eleven claims, or to properly adjust the claims.  Nevertheless,

11  AIG accepted the purported additional insured claims and paid defense costs, and

12  now expects BMHC to reimburse AIG after AIG obviously engaged in an

13  inadequate investigation and improper claims adjustment.

14         50.   The eleven claims and the amounts sought by AIG for reimbursement

15  as of September 30, 2017, are as follows:

16         a.   Acquaviva Brandon, 684-488610.  Beazer Homes claimed

17  additional insured status.  BMHC requested Beazer Homes allow AIG to provide

18  BMHC with documentation.  AIG provided BMHC with documents for this

19  additional insured claim, but none of the documents establish that BMHC actually

20  worked at any of the homes in the underlying lawsuit.  BMHC informed AIG of

21  this fact, but AIG has failed to provide any additional documentation.  AIG has

22  nonetheless sought reimbursement from BMHC on this claim for $49,326.41.

23         b.   Adams Joseph, 683-395787.  Richmond American Homes of

24  Nevada has sought additional insured coverage.  With approval from Richmond

25  American Homes, AIG forwarded to BMHC all documents provided by the

26  company to support its additional insured claim.  The document AIG relied upon

27  as proof that BMHC worked on the homes in the underlying lawsuit, was nothing

28  more than work product created by Richmond's legal counsel in connection with

the lawsuit.  That documentation is insufficient to support a claim for payment by AIG.  BMHC advised AIG of this, but AIG has not provided BMHC with any further documentation to support its payment.  AIG nonetheless has sought reimbursement from BMHC on this claim for $150,000.00.

c.  <u>Adam Ramin, 683-568652</u>. Morrison Homes claimed to be an additional insured to BMHC.  Morrison authorized AIG to release requested documents to BMHC, and AIG forward those documents to BMHC.  None of the documents establish that BMHC actually worked at any of the homes in the underlying lawsuit.  BMHC advised AIG of this fact, but AIG has not provided additional documentation.  Further, only twelve of the homes in the underlying lawsuit were completed before the Policies expired and one of the documents AIG forwarded to BMHC show allegation of defects related to BMHC's scope of work at those homes.  AIG nonetheless has sought reimbursement from BMHC on this claim for $53,756.79.

d.  <u>Anh Huynh, 501-279255</u>. Toll Brothers claimed to be an additional insured to BMHC.  Toll Brothers had a wrap policy.  The applicable policies on BMHC's work related to this project contained the wrap exclusion.  AIG should have denied the additional insured claim on the basis of the wrap exclusion alone.  AIG claims that one of the homes in the underlying lawsuit was completed by BMHC before it enrolled in Toll Brothers's wrap program.  Toll Brothers authorized AIG to release requested documents to BMHC, and AIG forward those documents to BMHC.  None of the documents provided evidence that BMHC actually worked on that particular home.  BMHC provided AIG with evidence that BMHC had enrolled in the wrap program before that particular home was completed.  AIG nonetheless has sought reimbursement from BMHC on this claim for $44,750.21

e.  <u>Bell (Sandestin), 683-475178</u>. KB Home Nevada claimed to be an additional insured to BMHC.  KB Home authorized AIG to release requested

Anderson Kill California L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA  90071

documents, and AIG forwarded same. None of these documents provided evidence that BMHC performed any work on the homes in the underlying lawsuit. AIG nonetheless has sought reimbursement from BMHC on this claim for $337,052.97.

f.    Childs Jason, 683-526886. KB Home Greater Los Angeles purported to be an additional insured of BMHC. KB Home authorized AIG to release requested documents to BMHC, and AIG forwarded same. None of these documents provided any evidence of BMHC's work on any of the homes in the underlying lawsuit. BMHC informed AIG of this fact but no further documentation has been provided to BMHC. AIG instead has sought reimbursement from BMHC on this claim for $181,889.48.

g.    Farmer Shawn, 683-595347. Morrison Homes claimed to be an additional insured to BMHC. With Morrison Homes's permission, AIG forwarded BMHC requested documentation. None of those documents provide any evidence that BMHC worked on any of the homes in the underlying lawsuit. BMHC advised AIG of this fact, but AIG has provided BMHC with no additional documentation. AIG, however, has sought reimbursement from BMHC on this claim for $38,201.99.

h.    Ray Timothy, 683-628959. Beazer Homes claimed to be an additional insured to BMHC. AIG paid to settle a lawsuit filed by another insurance company that had paid for Beazer's defense in the underlying lawsuit. With Beazer's approval, AIG provided BMHC with requested documents. None of those documents provide any evidence that BMHC worked on any of the homes in the underlying lawsuit. BMHC advised AIG of this fact but AIG has not provided any additional documents. AIG nonetheless has sought reimbursement from BMHC on this claim for $10,000.00.

i.    Sterling Court HOA (Mason), 683-342901. Richmond American Home of Nevada has purported to be an additional insured of BMHC.

Anderson Kill California L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

- 16 -

With Richmond American Home's permission, AIG forward to BMHC requested documentation. None of those documents, however, provide any evidence of work done by BMHC at any of the homes in the underlying lawsuit. AIG nonetheless has sought reimbursement from BMHC on this claim for $66,075.80.

j.     Yang Mei, 683-637855. KB Home Greater Los Angeles has claimed to be an additional insured of BMHC. KB Home authorized AIG to send to BMHC requested documents, and AIG forwarded same. None of those documents provided any evidence of BMHC's work at any of the homes in the underlying lawsuit. BMHC advised AIG of that fact, but AIG has provided no further documentation. AIG instead has sought reimbursement from BMHC on this claim for $61,548.96.

k.     River Canyon Estates, 501-256010. D.R. Horton Portland claimed to be an additional insured to BMHC. However, no lawsuit was ever field against D.R. Horton, as required under the Policies for defense coverage to be triggered. BMHC informed AIG of the lack of a lawsuit before AIG paid D.R. Horton, and that it would not reimburse AIG for voluntary payments. Despite the lack of a lawsuit, AIG has sought $17,949.09 from BMHC.

51.     Upon information and belief, AIG has paid additional costs on several of the foregoing eleven claims.

52.     Also, upon information and belief, AIG has continued to pay costs to purported additional insured claimants without conducting an adequate investigation, and has failed to properly adjust those claims. AIG improperly seeks such costs from BMHC for claimed reimbursement.

53.     AIG has failed to confirm that purported additional insureds named herein asserting a claim under the Policies were in fact additional insureds on the Policies' Completed Operations additional insured endorsements.

54.     AIG has further failed to confirm for at least nine of these claims that BMHC actually worked on at least one of the homes in the underlying lawsuits.

Anderson Kill California L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

Anderson Kill California L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

55.     Upon information and belief, AIG has also failed to investigate whether an exclusion to the insurance policies applies and bars additional insured coverage prior to seeking reimbursement for costs paid to purported additional insureds from BMHC.

56.     By improperly extending additional insured coverage under the Policies' Completed Operations additional insured endorsement, AIG has breached its obligations under the insurance policies that it sold to BMHC.

57.     Upon information and belief, in other instances, AIG has faced additional insured demands in which it has declined to extend additional insured status on virtually identical factual grounds—except that, in those instances, AIG was spending its own money, not money that ultimately would be reimbursed by a policyholder.  The difference in the present matter reflects AIG's intentional conduct in putting its interests first, before those of its policyholder.

58.     BMHC has been forced to expend costs and bring this lawsuit to address and terminate AIG's previous and continuing wrongful acts, including its failure to investigate and act in good faith toward its policyholder.

///
///
///
///
///
///
///
///
///
///
///
///

- 18 -
**COMPLAINT**

## FIRST CLAIM FOR RELIEF FOR DECLARATORY JUDGMENT

### (Against All Defendants)

59.     Plaintiff hereby incorporates paragraphs 1 through 58 as though set forth fully herein.

60.     An actual controversy exists between AIG and BMHC as to certain rights and the scope of insurance coverage under BMHC's four fronting insurance policies.

61.     AIG has paid costs for the defense of entities claiming to be additional insureds of BMHC for at least eleven underlying lawsuits.  AIG has sought reimbursement for those costs from BMHC.

62.     AIG has failed to obtain or present any competent proof that BMHC performed any work on any of the homes at issue in the underlying lawsuits.  Thus, its insurance policies should not be implicated and there should be no coverage under the Completed Operations additional insured endorsements.

63.     AIG owes BMHC a duty to adequately investigate and adjust additional insured claims to ensure that BMHC was involved or performed work on the homes in an underlying lawsuit, that the complained-of homes were completed during one of the policy periods, that the complained-of work was BMHC's and was defective, and that no policy exclusions apply to bar additional insured coverage.

64.     BMHC is therefore entitled to a declaration pursuant to 28 U.S.C. § 2201 that:

a.     AIG failed to conduct a proper investigation to determine if the purported additional insureds named herein were additional insureds under the Policies;

b.     AIG failed to conduct a proper investigation to determine whether BMHC performed work on at least one of the homes in the underlying lawsuits, that BMHC's work was completed during one of the policy periods, that

Anderson Kill California L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

Anderson Kill California L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

the complained-of work was BMHC's and was defective, and that no policy exclusions applied to bar coverage;

      c.     AIG voluntarily issued payments for underlying defense costs to such purported additional insureds;

      d.     BMHC owes no payments to AIG for reimbursement of AIG's voluntary payments;

      e.     AIG has a duty to and must perform adequate investigations and claims adjustments and confirm that a purported additional insured under the Policies is in fact an additional insured before AIG seeks reimbursement for payments it makes from BMHC; and

      f.     If AIG determines after performing due diligence that an entity is an additional insured under the Policies, it must also confirm that BMHC performed work on at least one of the homes at issue in the underlying lawsuit, that BMHC's work was completed during one of the policy periods for the Policies, that the complained-of work was BMHC's and was defective, and that no Policy exclusions apply to bar additional insured coverage before AIG seeks reimbursement for payments it makes from BMHC; and

      g.     AIG shares its investigation details with BMHC.

## SECOND CLAIM FOR RELIEF FOR BREACH OF CONTRACT
### (Against All Defendants)

65.    Plaintiff hereby incorporates paragraphs 1 through 64 as though set forth fully herein.

66.    BMHC purchased four fronting insurance policies from AIG.  The four insurance policies are, and at all times relevant to this dispute were, valid contracts between BMHC and AIG.

67.    The forms AIG chose to use as the Completed Operations additional insured endorsements have schedules that are intended to list completed projects for which additional insured coverage may be available.  AIG failed to list any

such projects.

68.     BMHC has performed all of its duties consistent with the terms and conditions of the Policies, and BMHC has paid all premiums.

69.     AIG has breached its contractual obligations under the Policies by failing to honor their terms and wrongfully providing additional insured coverage when no such coverage exists, and seeking reimbursements for such payments from BMHC.

70.     AIG has further breached its contractual obligations by failing to properly investigate the additional insured claims, and improperly adjusting such claims.

71.     BMHC has sustained damages as a result of AIG's breach.

72.     By reason of AIG's breach of the Policies, AIG is liable to BMHC for damages, including but not limited to compensatory and consequential damages, and reasonable attorneys' fees and expenses in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

### (Against All Defendants)

73.     Plaintiff hereby incorporates paragraphs 1 through 72 as though set forth fully herein.

74.     AIG owed BMHC a duty of good faith and fair dealing in the four insurance policies.

75.     This duty of good faith and fair dealing includes AIG's duty to conduct a good faith investigation and to properly adjust a claim.

76.     AIG breached this duty by failing to conduct a good faith investigation and properly adjust purported additional insured claims.

77.     In at least nine instances, AIG failed to confirm that BMHC actually worked on at least one of the homes in the underlying litigation against the purported additional insured, and, in at least one instance, AIG failed to confirm

Anderson Kill California L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA  90071

- 21 -

1   that an underlying lawsuit had actually been filed against the purported additional

2   insured.

3        78.    Upon information and belief, there are numerous documents created

4   or received by the builder during the course of construction of a project that the

5   additional insured claimant could have provided to AIG to establish whether

6   BMHC worked on a particular home, or had any particular connection to that

7   home,--*e.g.*, invoices, checks, lien waivers.

8        79.    Upon information and belief, AIG has failed to seek any such

9   documentation from purported additional insureds, or to forward to BMHC such

10   documentation if in AIG's possession.

11        80.    Further, AIG has failed to investigate and confirm that any work

12   claimed to have been done by BMHC on a home involved in an underlying

13   litigation was completed during the period the insurance policies were in effect.

14        81.    Without conducting a proper investigation, AIG failed in its duty to

15   properly adjust the claims under BMHC's insurance policies.

16        82.    AIG has instead attempted to shift its duty to investigate claims to its

17   policyholder BMHC by requiring BMHC to prove the negative and undertake the

18   additional task of obtaining permission for AIG to release documentation from

19   purported additional insureds.  These are investigations that AIG was duty-bound

20   to conduct; it was and is not the duty of AIG's policyholder to prove the negative.

21        83.    AIG has failed to confirm that the additional insured claimants are in

22   fact additional insureds under the insurance policies' Completed Operations

23   additional insured endorsements.

24        84.    AIG also has failed to determine whether any policy exclusions may

25   apply to bar additional insured coverage prior to seeking reimbursement for costs

26   paid to purported additional insureds from BMHC.

27        85.    The duty owed by AIG to BMHC under the Policies is equal to the

28   duty owed by AIG to an additional insured submitting a claim under the Policies.

Anderson Kill California L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

86.     Instead of treating BMHC and the purported additional insureds equally, AIG has favored itself and the purported additional insureds, improperly adjusted the claims, and paid defense costs to the purported additional insureds without conducting a good faith investigation.  AIG then improperly sought and continues to seek reimbursement of defense costs from BMHC for these improperly investigated and adjusted claims to which BMHC had no connection.

87.     Upon information and belief, in other instances, AIG has faced additional insured demands in which it has declined to extend additional insured status on virtually identical factual grounds—except that, in those instances, AIG was spending its own money, not money that ultimately would be reimbursed by a policyholder.  The difference in the present matter reflects AIG's intentional conduct in putting its interests first, before those of its policyholder.

88.     Despite BMHC pointing out deficiencies in AIG's claims for reimbursement, AIG has continued to demand reimbursement from BMHC for improperly investigated, adjusted and paid claims.

89.     AIG has therefore breached its duty of good faith and fair dealing to its policyholder BMHC.

90.     BMHC has sustained damages as a result of AIG's breach.

91.     BMHC has been forced to bring this lawsuit to remedy AIG's continuing wrongful acts.

92.     By reason of AIG's breach of its duties of good faith and fair dealing, AIG is liable to BMHC for damages, including but not limited to compensatory damages, punitive and exemplary damages, and reasonable attorney's fees and expenses in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF FOR ACCOUNTING

### (Against All Defendants)

93.     Plaintiff hereby incorporates paragraphs 1 through 92 as though set forth fully herein.

94.    AIG claims to have paid defense costs to purported additional insureds under BMHC's fronting insurance policies.  BMHC has disputed the claims of the purported additional insureds.

95.    BMHC has not been provided with details of the amounts AIG claims BMHC must pay to reimburse AIG since September 30, 2017.

96.    BMHC cannot determine the actual amounts in dispute, or the documentation supporting the amounts claimed to be owed to AIG by BMHC because that information is in the possession, custody, and control of AIG.

97.    Further, should it be determined that BMHC must reimburse AIG for any costs paid to purported additional insureds, BMHC is entitled to know the amounts unresolved and the documents supporting such amount.  Such information is in the possession of AIG and not BMHC.

98.    Accordingly, BMHC is entitled to an accounting from AIG.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

Anderson Kill California L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA  90071

**COMPLAINT**

## PRAYER FOR RELIEF

WHEREFORE, BMC STOCK HOLDINGS, INC. prays for judgment as follows:

1.    For the First Claim for Relief, a declaration pursuant to 28 U.S.C. § 2201 that:

    (a)    AIG failed to conduct a proper investigation to determine if the purported additional insureds named herein were additional insureds under the Policies;

    (b)    AIG failed to conduct a proper investigation to determine whether BMHC performed work on at least one of the homes in the underlying lawsuits, that BMHC's work was completed during one of the policy periods, that the complained-of work was BMHC's and was defective, and that no policy exclusions applied to bar coverage;

    (c)    AIG voluntarily issued payments for underlying defense costs to such purported additional insureds;

    (d)    BMHC owes no payments to AIG for reimbursement of its voluntary payments;

    (e)    AIG has a duty to and must perform adequate investigations and claims adjustments and confirm that a purported additional insured under the Policies is in fact an additional insured before AIG seeks reimbursement for payments it makes from BMHC;

    (f)    If AIG determines after performing due diligence that an entity is an additional insured under the Policies, it must also confirm that BMHC performed work on at least one of the homes at issue in the underlying lawsuit, that BMHC's work was completed during one of the policy

Anderson Kill California L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

- 25 -

**Anderson Kill California L.L.P.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

periods for the Policies, that the complained-of work was BMHC's and was defective, and that no Policy exclusions apply to bar additional insured coverage before AIG seeks reimbursement for payments it makes from BMHC; and

    (g)    AIG shares its investigation details with BMHC.

2.    For the Second Claim for Relief, an award to Plaintiff in an amount of damages to be determined at trial;

3.    For the Third Claim for Relief, an award to Plaintiff for compensatory, punitive, and exemplary damages in an amount to be determined at trial, and attorney's fees;

4.    For the Fourth Claim for Relief, an accounting of the underlying defense costs asserted by purported additional insureds, and the amounts paid by AIG to those purported additional insureds;

5.    For attorneys' fees incurred in bringing this action;

6.    For costs of suit incurred herein; and,

7.    For such other and further relief as the Court may deem just and proper.

DATED: May 29, 2018           ANDERSON KILL CALIFORNIA L.L.P.

                        By:    /s/ *Bridget B. Hirsch*
                               Bridget B. Hirsch

                        Attorneys for Plaintiff BMC STOCK HOLDINGS, INC.

1

## **DEMAND FOR JURY TRIAL**

Plaintiff BMC Stock Holdings, Inc. hereby demands a trial by jury for all issues triable by a jury pursuant to the Federal Rules of Civil Procedure, Rule 38, and the Local Rule of Court.

DATED:  May 29, 2018                ANDERSON KILL CALIFORNIA L.L.P.

By:    /s/ *Bridget B. Hirsch*
          Bridget B. Hirsch

Attorneys for Plaintiffs BMC STOCK
HOLDINGS, INC.

Anderson Kill California L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

- 27 -
**COMPLAINT**