# Exhibit B

Case 2:18-cv-04726-JAK-RAO  Document 1-2  Filed 05/29/18  Page 2 of 7  Page ID #:34



February 9, 2018

Via Email Only
mmccarthy@zeklaw.com
Mary G. McCarthy, Esq.
Zeichner, Ellman & Krause LLP
1211 Avenue of the Americas
NewYork, New York 10036

**RE:   Building Materials Holding Corporation ("BMHC") GL 480 60 23 and GL 933 29 02 (11/11/03 to 11/11/04) and GL 933 29 02 and GL 554 87 69 (11/11/04 to 11/11/05) (the "Policies")**

Dear Mary:

Due to BMHC's 2009 bankruptcy and the applicable statutes of limitation and repose, the only new claims being presented to AIG on the 2003-04 and 2004-05 BMHC program (the "BMHC Program") are additional insured ("AI") claims in construction defect actions asserted against the Policies.

AI claims are complicated in that the carrier owes an obligation to the Additional Insured, but also retains its obligation to the Named Insured whose interests may be at odds with the Additional Insured. This is especially true when the Named Insured has a significant exposure due to a high deductible program like the BMHC Program. **The duty owed by AIG to BMHC under the BMHC Policies is equal to the duty owed by AIG to the Additional Insured submitting the claim.**

When a claimant asserts an AI claim on the Policies in a construction defect case, the AIG adjuster must first confirm that the claimant is in fact an additional insured on the Policies' completed operations coverage. The burden is on the claimant to prove AI status.  This requires that the claimant either prove that it was "scheduled" as an AI on the Policies by presenting a 2037 endorsement issued by AIG in its name, or provide a subcontract signed by BMHC or an insured subsidiary which is applicable to the construction of the homes in suit and which includes insurance requirements sufficient to trigger coverage under the Policies' blanket 2037 endorsement.[1] Determining whether the claimant is an additional insured on the Policies' completed operations coverage is just the start of the adjuster's investigation obligation.

In addition, the adjuster must confirm that: (i) BMHC actually worked on at least one of the homes in the suit and confirm BMHC's scope of work; (ii) BMHC's work on that home was completed during the term of the Policies; and (iii) the plaintiff formally alleges that BMHC's work on the home was defective. Self-serving statements from the AI or its counsel are not sufficient to satisfy this burden of proof. Documentation is required.  Once the AIG adjuster has confirmed ALL of this, he or she must examine the Policies to determine if there are any exclusions that would apply to bar coverage, including but not limited to the wrap exclusion that appears in the two policies that cover the BMHC subsidiaries that performed construction services work.[2] The adjuster has additional obligations for claims where the AI is seeking indemnity coverage in addition to defense coverage.  The invoices at issue are related to defense coverage only, so these additional obligations are not addresses in this letter.

---

[1] Under the original design of the BMHC Program, the blanket 2037 AI endorsement should not have been attached to the Policies.  BMHC has not, and by the letter does not, waive any claim it may have against AIG for negligent underwriting and policy issuance

[2] There were two general liability policies issued in each year under the BMHC Program.  One policy insured BMHC's retail operations (supply) and the other insured BMHC's construction services operations (install).



For many years BMHC's corporate risk management and legal department employees have complained to AIG adjuster's, the adjuster's supervisors, and countless other AIG executive in the chain of command, that the AIG adjusters handling these AI claims were not properly investigating them before accepting the claim and making payment. Due to AIG's refusal to adequately respond to BMHC's concerns over the course of almost a decade, BMHC stopped paying the AIG deductible invoices related to these AI claims. BMHC ultimately and rightfully demanded that AIG provide documentation to BMHC to confirm that the payments AIG made on these AI claims were appropriate and that AIG was entitled to reimbursement from BMHC.

The delay in reimbursing AIG in the past several years resulted solely from AIG's refusal to provide this documentation. When AIG finally realized that BMHC would not make payment unless the documentation was provided, AIG began to provide BMHC the AI claimant's contact information and required that BMHC obtain approval from the AI claimant for AIG to send BMHC the requested documentation.[3] On those claims where the documentation provided by AIG to BMHC supported AIG's payment, the deductible reimbursement invoice(s) were promptly paid. If the documentation did not support the payment, BMHC advised the adjuster (repeatedly) what specific documentation was missing so that AIG could provide that documentation. Due to BMHC's bankruptcy, it is not involved in the litigation underlying the AI claim. In many instances receipt of a deductible invoice from AIG is BMHC's first notice of the claim. Furthermore, due to the expiration of the statute of repose and the bankruptcy, BMC no longer has most of the job files or electronic data available, to allow it to conduct its own investigation.[4]

Below is a list of the claims where AIG has submitted deductible invoices to BMHC which have not been reimbursed. For each claim the invoice numbers and unpaid amounts related to the claim are shown. An explanation as to why BMHC has not reimbursed AIG is also included for each claim. In summary, these invoices have not been paid because AIG has not provided BMHC with documents that support AIG's determination that the claim was valid and payment was required.

For each of the claims set forth below, the AI claimant authorized AIG to provide BMHC the documentation the AI submitted to AIG to support its claim. The documents have been sent to BMHC by AIG and have been reviewed by BMHC. In each instance, as set forth below, the documentation provided does not support AIG's acceptance of the AI tender, or its decision to make payment to the claimant and AIG was so advised. If AIG has the missing documentation, please send it to me for review. If the AI claimant did not meet the required burden of proof and AIG paid the claim in error, BMHC has no obligation to reimburse AIG and requests that the invoice(s) be withdrawn.

## GENERAL LIABILITY INVOICES AS OF SEPTEMBER 30, 2017:

### ACQUAVIVA BRANDON, 683-488610, Total disputed $49,326.41

Invoice: NI081634701 $49,326.41

This is an AI claim by Beazer Homes related to work performed by BMC West in the Mirabella and Montevino projects in California. Beazer provided authority to AIG to release the requested documents to BMHC. AIG forwarded these documents, however *none of the documents establish that BMC West actually worked at any of the homes in the underlying lawsuit.* BMHC advised AIG of this fact, but to date AIG has not provided additional documents.

---

[3] For years AIG wrongfully claimed that these documents (e.g. the subcontract between the AI and BMHC, the certificate issued by BMHC's broker and proof of payment to BMHC for work on the homes in suit) were privileged and confidential and AIG was legally precluded from sharing them with BMHC. However, not one AI claimant has objected to AIG providing the documents to BMHC, or even attempted to assert a claim of privilege or confidence.
[4] BMHC has absolutely no duty to investigate any AI claimants' allegations. That duty rests solely with AIG.



**ADAMS JOSEPH, 683-395787, Total disputed $150,000.00**

> Invoice: NL071633757, $150,000.00

This is an AI claim by Richmond American Homes of Nevada related to work performed by Knipp Brothers Industries at the Madera project in Nevada. With approval from Richmond, AIG forwarded to BMHC all documents provided by Richmond to support its AI claim. *The document AIG apparently relied upon as proof Knipp Brothers worked on the homes in the underlying lawsuit was work product created by Richmond's legal counsel in connection with the lawsuit* which is insufficient to support AIG's payment. BMHC advised AIG of this fact, but to date AIG has not provided BMHC any other documentation to support the basis for its payment.

Furthermore the only home with a close of escrow date falling within the Policies was actually covered by Richmond's wrap and the two AIG policies that cover Knipp Brothers' work contain wrap exclusions.

**ADAM RAMIN, 683-568652, Total disputed $53,756.79**

> Invoice: NL081755119, $92.57
> Invoice: NL061751282, $2,219.65 (BMC took a credit on NL061751200)
> Invoice: NL051749123, $1,213.41
> Invoice: NL041747539, $219.85
> Invoice: NL031746423, $443.54
> Invoice: NL021744346, $160.73
> Invoice: NL011742074, $49,407.04

This is an additional insured claim by Morrison Homes related to work performed by BMC West at the Bandera, Palermo and Ventana projects in California. Morrison provided authority to AIG to release the requested documents to BMHC. AIG forwarded same; however, *none of the documents establish that BMC West actually worked at any of the homes in the underlying lawsuit*. BMHC advised AIG of this fact, but to date AIG has not provided additional documents. Furthermore, only 12 homes were completed before the Policies expired and none of the documents AIG forwarded to BMHC evidence allegation of defects related to BMC West's scope of work at these 12 homes.

**ANH HUYNH, 501-279255, Total disputed to 9-30-2017 as claim is still open $44,750.21**

> Invoice: NL091756287 $2197.54
> Invoice: NL071752357, $3152.80
> Invoice: NL051749123, $2045.42
> Invoice: NL041747539, $878.81
> Invoice: NL031746423, $1186.66
> Invoice: NL021744346, $498.21
> Invoice: NL011742074, $3450.63
> Invoice: NL121642528, $831.34
> Invoice: NL111640726, $598.47
> Invoice: NL101639093, $2237.39
> Invoice: NL091637361, $4300.20
> Invoice: NI081634701, $395.52
> Invoice: NL071633901, $22,977.22



This is an additional insured claim by Toll Brothers related to work performed by KBI NorCal at Glen Eagle, Turnberry, Muirfield, St Andrews and Inverness subdivisions in the Dublin's Ranch project in California. This claim should have been denied by AIG as the documents submitted by Toll clearly show that the project was covered by the Toll wrap. The AIG policies that covered KBI Nor Cal's work contain wrap exclusions. We also note that AIG paid this claim under a BMHC policy that specifically excluded the work of KBI NorCal.[5]

AIG claims that one of the homes in the suit was completed by KBI NorCal before it enrolled in the wrap. Toll provided authority to AIG to release the documents BMHC requested. AIG forwarded same; however, *these documents did not provide any evidence that KBI NorCal actually worked on this particular home.* Furthermore, BMHC provided evidence to AIG that confirmed KBI NorCal enrolled in the wrap before the home in question was completed.

### BELL (SANDESTIN), 683-475178, Total disputed $337,052.97

Invoice: NL111640680, $144.40
Invoice: NL091637318, $538.18
Invoice: NL071633757, $332,102.94
Invoice: NL061633165, $4,267.45

This is an additional insured claim by KB Home Nevada related to work performed by KBI Construction at the San Destin project in Nevada. KB Homes provided authority to AIG to release the documents requested by BHMC. AIG forwarded same; however, *these documents did not provide any evidence of KBI Construction's work at any of the homes in the underlying suit.* BMHC advised AIG of this fact, but no additional documents have been provided.

### CHILDS JASON, 683-526886, Total disputed $181,889.48

Invoice: NL091637318, $15,124.71
Invoice: NL071633757, $3,914.59
Invoice: NL041630128, $5,510.17
Invoice: NL031628371, $3,742.97
Invoice: NL011625911, $12,206.90
Invoice: NL111524719, $141,390.14

This is an additional insured claim by KB Home Greater Los Angeles related to work performed by KB Industries LP at the Blossom Heights Belmont project in California. KB Homes provided authority to AIG to release the documents requested by BMHC. AIG forwarded same; however, *these documents did not provide any evidence of KB Industries' work at any of the homes in the underlying lawsuit.* BMHC advised AIG of this fact, but no additional documents have been provided.

---

[5] Originally AIG allocated this claim to a BMHC policy that covered KBI Nor Cal. After BMHC raised the wrap exclusion, AIG closed this claim and opened a new claim under a BHMC policy that did not contain the wrap exclusion. This action is quite troubling, but did not resolve the issue for AIG since KBI Nor Cal is not insured under the BMHC policy AIG moved the claim to and paid the claim under.



**FARMER SHAWN, 683-595347, Total disputed $38,201.99**

> Invoice: NL041747539, $163.30
> Invoice: NL031746423, $1109.14
> Invoice: NL021744346, $2198.01
> Invoice: NL101639093, $710.70
> Invoice: NL081634701, $585.10
> Invoice: NL101522171, $33,435.74

This is an additional insured claim by Morrison Homes related to work performed by BMC West at the Town Square and Park Place projects in California. With permission from Morrison Homes, AIG provided BMHC the documents it requested. However, *none of these documents provide any evidence that BMC West worked on any of the homes in the underlying lawsuit.* BMHC advised AIG of this fact, but no additional documents have been provided.

**RAY TIMOTHY, 683-628959, Total disputed $10,000.00**

> Invoice: NL061517552, $10,000.00

This is an additional insured claim by Beazer Homes related to work performed by BMC West at the Mirabella and Montevino projects in California. It appears AIG's payment was actually made to settle a lawsuit filed by another carrier who had paid for Beazer's defense in the underlying lawsuit. With Beazer's approval, AIG provided the documents BHMC requested; however, *these documents did not provide any evidence of BMC West work at any of the homes in the underlying lawsuit.* BMHC advised AIG of this fact, but no additional documents have been provided.

**STERLING COURT HOA (MASON), 683-342901, Total disputed $66,075.80**

> Invoice: NL041630128, $8,318.48
> Invoice: NL061517552, $57,757.32

This is an additional insured claim by Richmond American Homes of Nevada related to work performed by SelectBuild Nevada at the Sterling Courtyard project in Nevada. With Richmond's approval, AIG provided the documents BHMC requested; however, *these documents did not provide any evidence of BMC West work at any of the homes in the underlying lawsuit.* BMHC advised AIG of this fact, but no additional documents have been provided.

**YANG MEI, 683-637855, Total disputed $61,548.96**

> Invoice: NL041630128, $2,292.10
> Invoice: NL011625911, $59,256.86

This is an additional insured claim by KB Home Greater Los Angeles related to work performed by KB Industries LP at the Blossom Heights Belmont project in California. KB Homes provided authority to AIG to send BMHC the documents it requested. AIG forwarded same; however, *these documents did not provide any evidence of KB Industries work at any of the homes in the underlying lawsuit.* BMHC advised AIG of this fact, but no additional documents have been provided.



In every one of these claims, AIG apparently failed to confirm that BHMC actually worked on at least one of the homes in the suit.  There are numerous documents created or received by the builder during the course of construction that the AI claimant could have provided to AIG to establish that BMHC worked on a particular home (e.g. invoices, checks, lien waivers, lot releases).  For any of the claims set forth above, if AIG has these documents, or other valid evidence that supports AIG's decision to make payment, please send me the documents to review.  If not, the invoices referenced above should be withdrawn.

There is one other claim related to the unpaid invoices.

**RIVER CANYON ESTATES, 501-256010, Total disputed $17,949.09**

        Invoice: NL071633901, $5,333.90
        Invoice: NL061633280, $12,615.19

This is an additional insured claim by D.R. Horton Portland related to work performed by BMC West at the River Canyon Estates project in Oregon.  This claim should have been denied by AIG as no lawsuit was ever filed against DR Horton.[6]  The existence of a "suit" is required to trigger coverage under the Policies.  Unlike some other states, there is nothing in the Oregon right to repair statute or related case law that requires that an insurer treat a right to repair claim as a "suit" for coverage trigger purposes.  AIG was informed of the lack of a lawsuit before payment was made and advised that BMHC would not reimburse AIG if it voluntarily made payment in the absence of a lawsuit.  If AIG disagrees with BMHC position, please provide a written statement of the legal basis for payment of this claim under the Policies absent a lawsuit.

We look forward to your response.

Sincerely,

Maureen E. Thomas
Legal and Risk Management Counsel
Maureen.Thomas@BuildWithBMC.com
Direct 248-698-0965

cc: Lanesha Minnix

---

[6] Other defenses to reimbursement may apply.

6