# Exhibit C

# ZEICHNER ELLMAN & KRAUSE LLP

1211 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10036
TEL: (212) 223-0400

MICHAEL S. DAVIS
(212) 826-5311
mdavis@zeklaw.com

WWW.ZEKLAW.COM

April 26, 2018

**Via Email**
Maureen E. Thomas, Esq.
Building Materials and Construction Services
720 Park Blvd., Suite 200
Boise, ID 83712

**Building Materials Holding Corporation**

Dear Ms. Thomas:

As you know, we represent National Union Fire Insurance Company of Pittsburgh, Pa., American Home Assurance Company and certain other entities related to American International Group, Inc. (collectively, "National Union") who issued insurance coverage to Building Materials Holding Corporation ("BMHC").

This is to respond to your February 9, 2018 letter, in which you state on p. 2 that BMHC has "complained [to National Union] that the [National Union] claims adjusters handling AI [additional insured] claims were not properly investigating them before accepting the claim and making payment" and that "the documentation provided [by National Union] does not support [National Union's] acceptance of the AI tender, or its decision to make payment to the claimant." In your letter, you identify 11 AI claims that BMHC disputes.

National Union provided insurance coverage to BMHC from November 11, 2003 through November 11, 2005 (the "Program") including, without limitation, general liability coverage under policies 4806023, 9332902, 9332902 and 5548769 (collectively, the "GL Policies"). National Union has paid and continues to handle and pay insured claims on behalf of BMHC and additional insureds under these policies.

The Program is governed by Large Risk Rating Plan Endorsements ("LRRPs") which provide for a *Retained Amount* of $1,000,000 Each Occurrence for

NEW YORK | CONNECTICUT | NEW JERSEY | ISRAEL

ZEICHNER ELLMAN & KRAUSE LLP

April 26, 2018
Page 2

Products or Completed Operations Liability. Each LRRP provides for *Allocated Loss Adjustment Expenses*[1] ("*ALAE*") Option C which provides:

> Option C: *Subject Loss* includes all or a part of *ALAE* calculated according to the following formula:
>
> i. If we incur NO obligation under the policies to pay damages, benefits or indemnity resulting from a claim, *Subject Loss* under that claim will include all *ALAE* up to the applicable *Retained Amount* and a percentage of all *ALAE* in excess thereof. That percentage is shown in Section 3 of Part II under "Option C Excess %"; or
>
> ii. If we DO incur an obligation to pay damages, benefits or indemnity under the policies because of a claim, *Subject Loss* under that claim will include all *ALAE* incurred under that claim, multiplied by the amount of our obligation to pay damages or benefits up to the applicable *Retained Amount*, divided by the total amount of our obligation to pay damages or benefits.

Copies of the LRRPs are attached.

BMHC is now in default under the governing Program agreements relating to loss invoices totaling $1,010,609.76 from June 2015 through September 2017. See, attached payment log. Additional loss reimbursements amounts have continued to accrue.

In your February 9, 2018 letter, it appears that you are disputing certain loss invoices amounts because you question National Union's duty to indemnify claims made against the GL Policies by certain additional insureds. However, in asserting your position, you bypass a threshold issue that, before National Union can determine whether it has a duty to indemnify, it must first determine whether it has a duty to defend.

Many of BMHC's additional insureds have tendered claims to National Union for defense and/or indemnity under the GL Policies. National Union has

---

[1] *Allocated Loss Adjustment Expenses* is defined to "include all fees for service of process and court costs and court expenses; pre- and post-judgment interest; attorneys' fees; costs of undercover operative and detective services; costs of employing experts; costs for legal transcripts, copies of any public records, and costs of depositions and court-reported or recorded statements; costs and expenses of subrogation; and any similar fee, cost or expense reasonably chargeable to the investigation, negotiation, settlement or defense of a loss or a claim or suit against you, or to the protection and perfection of your or our subrogation rights."

#952965.v3

ZEICHNER ELLMAN & KRAUSE LLP

April 26, 2018
Page 3

analyzed the additional insured claims and has determined that certain claims trigger a defense obligation under the GL Policies.

In response to the tenders, except for the Ray matter, National Union has advised the insureds against whom a potentially covered claim has been asserted that, subject to a full and complete reservation of rights, National Union will provide a defense. Copies of the reservation of rights letters are attached.

It is well settled that an "insurer's duty to defend is broader than the duty to indemnify. An insurer owes the insured a duty to defend against claims that create 'a potential for indemnity under the insurance policy,' and that duty arises even if the evidence suggests, without conclusively establishing, that the loss is not covered." *The Travelers Property Casualty Co. of America v. Actavis, Inc.*, 16 Cal. App. 5th 1026, 1036-1037 (2017) (Internal citations omitted).

In California, the courts routinely hold "[a]n insurer owes a broad duty to defend against claims that create a potential for indemnity under the insurance policy. An insurer must defend 'where the evidence suggests, but does not conclusively establish, that the loss is not covered." *McMillin Management Services, L.P. v. Financial Pacific Ins. Co.*, 17 Cal. App. 5th 187, 195 (Cal. App. 4th Dist. November 14, 2017), quoting *Hartford Casualty Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277 (2014).

An insurer's determination of whether a duty to defend exists "depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy. But the duty also exists where extrinsic facts known to the insurer suggests that the claim may be covered." *Id.* "If any facts stated in or fairly inferable from the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises." *Id.* at 191, citing *Scottsdale Ins. Co., v. MV Transportation*, 36 Cal. 4th 643 (2005). The duty to defend "continues 'until [the insurers] can conclusively refute th[e] potential' that liability will arise under the policies," which places a "high burden" on the insurer. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Seagate Techs., Inc.*, 466 F. App'x 653, 655 (9th Cir. 2012) (Internal citation omitted).

National Union provided BMHC with general liability coverage under the GL Policies and it is undisputed that each of these policies provides coverage to BMHC's additional insureds. In your letter, you question BMHC's obligation to reimburse National Union for certain deductible losses because National Union "has not provided BMHC with documents that support [National Union's] determination that the claim was valid and payment was required." National Union has reviewed each of

#952965.v3

ZEICHNER ELLMAN & KRAUSE LLP

April 26, 2018
Page 4

these eleven claims and is satisfied that National Union has the duty to defend each of those claims and, as explained above, the duty to defend is broader than the duty to indemnify To support that conclusion, enclosed are copies of the most recent versions of the complaints or notices of claims for each of those eleven claims.

At this juncture, National Union remains steadfast in its position that its duty to defend was triggered for these eleven claims asserted by the claims asserted against these additional insureds. Thus, National Union requests that BMHC submit payment of $1,010,609.76 for outstanding loss reimbursements within 30 days of this letter. If timely payment is not received, National Union reserves the right to commence proceedings to enforce its rights to reimbursement of the costs billed. That said, National Union is open to an attempt at prompt mediation of this dispute if you believe it may be of assistance.

Please be advised that this letter is not, and should not be construed as, a waiver of any terms, conditions, exclusions or other provisions of the GL Policies, or any other policies of insurance issued by National Union or any of its affiliates. National Union expressly reserves all its rights under the GL Policies, including the right to assert additional defenses to any claims for coverage.

Please respond by May 29, 2018.

Sincerely yours,

Michael S. Davis

MSD:asl
Enclosure

#952965.v3